UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| STEVE NICHOLSON, GENEVIEVE NICHOLSON, SONDRA NICHOLSON<br>Plaintiffs,<br><br>vs.<br><br>NCO FINANCIAL SYSTEMS, INC.<br>Defendant.<br>_____/ | )<br>)<br>)<br>)  Case No. _____<br>)<br>)  Division: _____<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Jurisdiction

1. This action arises under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., the Florida Consumer Collection Practices Act (FCCPA), Florida Statutes § 559.55 et seq., and Florida state common law.

2. This court has federal question jurisdiction over Plaintiff's FDCPA claim pursuant to 28 U.S.C. § 1331.

3. This court has supplementary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are related matters arising out of the same transaction or occurrence.

### Parties

4. Plaintiffs Steve Nicholson (hereinafter "Steve") and Genevieve Nicholson (herein after Genevieve) are a married couple and citizens of the state of Florida.

5. Plaintiff Sondra Nicholson (hereinafter Sondra) is the mother of plaintiff Steve Nicholson and is a citizen of the state of Florida.

6. Defendant NCO Financial Systems, Inc. (hereinafter "NCO") is a corporation with its principle place of business in Horsham, Pennsylvania.

## Factual Allegations

7. Steve was the sole obligor on a debt owed to Chase Bank USA, N.A. (hereinafter "Chase").

8. On July 5, 2007, NCO employee "Wilde," attempting to collect the debt originally owed to Chase, left a message on Steve and Genevieve Nicholson's answering machine regarding alleged pending litigation against Steve and Genevieve over the debt owed by Steve to Chase which tended to imply that Mrs. Wilde was an attorney or was employed by an attorney.

9. Steve returned the call to discuss the matter. During this conversation, the NCO employee continued to imply that she was an attorney or worked for an attorney preparing litigation to be filed in Hillsborough County Court against Steve and Genevieve.

10. NCO told Steve that both his wages and those of his wife Genevieve would be garnished, and that they would be responsible for all legal fees and court costs. Steve asked about payment options, but NCO declined the offer and stated that it merely wished to inform the Nicholson's of the pending litigation and laughed that the Nicholson's would be paying to sue themselves.

11. On July 6th, 2007, the NCO employee "Wilde" called and left another message, the content of which was meant to imply or misrepresent that she was an attorney and preparing to start legal proceedings.

12. On July 10, 2007, an unidentified caller believed to be NCO employee "Wilde" called the Nicholson residence but did not leave a message. Approximately ten minutes after this call, Genevieve received a call from an unidentified caller whom she also believed to be "Wilde."

13. On July 10th, 2007, Genevieve's mother (who is not named in this suit) received a message on her answering machine from an NCO employee urging her to call him back. She called the number and was connected to an NCO employee named "Duckworth" who falsely stated that he represented Chase and was attempting to collect a debt from Steve.

14. On July 10th, 2007, Steve's mother Sondra Nicholson also received a call from NCO employee "Duckworth" who falsely stated that he represented Chase and was attempting to collect a debt from Steve.

15. On July 11, 2007, Steve called NCO and spoke to NCO employee "Duckworth." The employee falsely claimed that he represented Chase. He also claimed that he was reviewing Steve's credit report and falsely stated that it "didn't look that bad."

16. "Duckworth" then stated that he had noticed that Steve was an authorized user of Sondra's credit card and urged him to transfer the debt to that credit card. Steve refused. The employee then asked to initiate a three-way call with Steve's mother, Sondra, which Steve also refused.

17. After Steve refused to perform the transfer, the NCO employee offered to reduce the debt to $5,200. Duckworth requested an "over-the-phone" check as earnest or good faith money in return for reducing the debt.

18.  Steve informed "Duckworth" that there was no money in his account and that authorizing such a check would violate Florida law. "Duckworth" falsely told Steve that the check would not be illegal because "it would never be cashed." Steve again refused and the call was terminated.

19.  Genevieve's mother subsequently received two additional telephone messages from NCO employees on July 12, 2007.

20.  On July 17, 2007, Steve again contacted NCO. Two separate NCO employees once again urged him to transfer the debt onto his mother's credit card.

21.  Steve refused to transfer the debt onto his mother's credit card and was told by NCO that, if he did not comply, this would be considered as a refusal to pay that would escalate the situation and lead to "dire consequences" for Steve and his wife.

22.  NCO then accused Steve of fraudulently misusing his credit card, falsely implying that Steve had committed a criminal act.

23.  Immediately after the conversation ended, NCO contacted Steve's mother, Sondra. The caller represented that he was with Chase and informed Sondra of her son's financial difficulties.

24.  NCO attempted to coerce Sondra into paying Steve's debt, threatening to close her Chase account, falsely stating that her credit rating would be adversely affected by Steve's debt, and implying that NCO would hold her legally liable for the debt. The NCO employee told Sondra that "anything on one Chase card affects any other Chase card. It was settled with your son for $6,000, but if we sue we can collect $11,000.00 and your credit will be affected."

25.  NCO again attempted to contact Sondra by telephone several days later and stated that he had wanted to give her "a couple of days to think about this."

26. Between July 24, 2007 and November 5, 2007 representatives, agents or electronic devices of NCO left more than 25 messages on Steve and Genevieve's answering machine, and placed dozens of additional calls where no message was left.

### Count I - Fair Debt Collection Practices Act (Steve Nicholson v. NCO)

27. Plaintiff reincorporates and realleges paragraphs 7 through 26.

28. Steve Nicholson was the sole obligor on a debt incurred primarily for personal, family, or household purposes which was originally owed to Chase and is thus a "consumer" within the meaning of § 1692a(3).

29. Defendant NCO is a corporation that regularly uses instrumentalities of interstate commerce, including the postal service and the telephone system, for the principal purpose of collecting debts owed to another. In this instance, NCO was attempting to collect a debt owed by Steve Nicholson to Chase. NCO is therefore a "debt collector" within the meaning of § 1692a(6).

30. At no time during the initial oral communication between NCO and Steve on July 5, 2007, did NCO disclose that it was attempting to collect a debt and that any information obtained would be used for that purpose. NCO's failure to provide this disclosure as required by § 1692e(11) constituted a violation of the FDCPA.

31. NCO violated § 1692g by failing to send Steve written notice containing the disclosures required by § 1692g(1) through (5) within five days of the initial communication, which occurred on July 5, 2007.

32. Based on information and belief, NCO did not intend to pursue, and/or did not have the legal right to pursue, the legal actions, including wage garnishment and the filing of a lawsuit, that it communicated to Steve Nicholson, and as such violated § 1692e.

52. Repeatedly causing the telephones of the Nicholsons and their relatives to ring between July 6th and November 12th when NCO knew or should have known that they were unwilling or unable to pay the debt was conduct the natural consequence of which was to harass, oppress, or abuse Genevieve in connection with the collection of a debt, and as such constituted a violation of § 1692d.

## Liability and Damages (15 U.S.C. § 1692k)

53. Plaintiff's FDCPA claims have been brought within one year from the date on which the violations occurred pursuant to § 1692k(d).

54. Based on information and belief, the violations of the FDCPA by NCO were intentional and did not result from a bona fide error.

55. Based on information and belief, NCO does not maintain procedures reasonably adapted to avoid errors and violations of the FDCPA.

56. As a direct, proximate, and foreseeable result of NCO's violations of the FDCPA, Genevieve has suffered embarrassment, humiliation, mental suffering, severe emotional distress, anxiety, depression, nervous stomach, sleep loss, and loss of consortium with her husband, and should be awarded actual damages to compensate her for NCO's acts pursuant to § 1692k(a).

57. Due to the repeated, flagrant, and intentional violations of the FDCPA by NCO, as well the as the number of people affected by these violations, Genevieve should be awarded statutory damages pursuant to § 1692k(a)(2)(A), actual damages, punitive damages and such other relief as the court deems appropriate.

58. Pursuant to § 1692k(a)(3), this court should award Plaintiffs reasonable attorney's fees and costs.

### Count III – Fair Debt Collection Practices Act (Sondra Nicholson v. NCO)

59. Sondra Nicholson is a "consumer" within the meaning of § 1692a(3) because she is a natural person that NCO alleged owed a debt, namely the debt incurred by Steve to Chase upon which NCO falsely implied she was personally liable.

60. Defendant NCO is a corporation that regularly uses instrumentalities of interstate commerce, including the postal service and the telephone system, for the principal purpose of collecting debts owed to another. In this instance, NCO was attempting to collect a debt owed by Steve Nicholson to Chase. NCO is therefore a "debt collector" within the meaning of § 1692a(6).

61. Because Steve was the sole obligor on his Chase account, NCO violated § 1692e by falsely representing to Sondra that it could take legal and informal action against her to collect Steve's debt if she did not pay it for him.

62. Repeated statements made to Sondra by NCO employees falsely representing that they worked with or represented Chase, the original creditor, rather than a debt collection agency, constituted a violation of § 1692e.

63. Because NCO had no need to acquire further location information about Steve pursuant to § 1692b, and did not receive direct consent from any party, NCO violated § 1692c(b) by repeatedly contacting Sondra and attempting to coerce her into paying Steve's debt.

64. Repeatedly calling Sondra when NCO knew or should have known that she was not legally obligated to pay Steve's debt and that Steve had not given them permission to contact her was conduct the natural consequence of which was to harass, oppress, or abuse Sondra in connection with the collection of a debt, and as such constituted a violation of § 1692d.

65. Attempts by NCO to coerce Sondra into using her credit card to pay a debt owed by her son and upon which she herself was not legally obligated by threatening legal action against her, the cancellation of her credit card, and other improper actions were an unfair or unconscionable means of collecting a debt which violated § 1692f, or in the alternative were false or misleading representations which violated § 1692e.

### Liability and Damages (15 U.S.C. § 1692k)

66. Plaintiff's FDCPA claims have been brought within one year from the date on which the violations occurred pursuant to § 1692k(d).

67. Based on information and belief, the violations of the FDCPA by NCO were intentional and did not result from a bona fide error.

68. Based on information and belief, NCO does not maintain procedures reasonably adapted to avoid errors and violations of the FDCPA.

69. As a direct, proximate, and foreseeable result of NCO's violations of the FDCPA, Sondra has suffered embarrassment, humiliation, mental suffering, severe emotional distress, depression, and anxiety, and should be awarded actual damages to compensate her for NCO's acts pursuant to § 1692k(a).

70. Due to the repeated, flagrant, and intentional violations of the FDCPA by NCO, as well the as the number of people affected by these violations, Sondra should be awarded the full $1,000 in statutory damages pursuant to § 1692k(a)(2)(A).

71. Pursuant to § 1692k(a)(3), this court should award Plaintiffs reasonable attorney's fees and costs.

### Count IV - Florida Consumer Collection Practices Act (Steve Nicholson v. NCO)

72.     Plaintiffs incorporate by reference paragraphs 7 through 26 of the Complaint.

73.     Steve Nicholson was the sole obligor on a debt incurred primarily for personal, family, or household purposes which was originally owed to Chase Bank USA, N.A. (hereinafter "Chase") and is thus a "consumer" or "debtor" within the meaning of § 559.55(2).

74.     All of the communications described herein occurred within the state of Florida and were attempts to collect a debt.

75.     Because Steve was the sole obligor on his Chase account, NCO violated § 559.72(9) by falsely representing that it could take legal action against Sondra to collect Steve's debt if she did not pay it for him.

76.     Since Genevieve was not a co-obligor for Steve's debt to Chase, NCO violated § 559.72(9) when it falsely claimed that it could garnish her wages and take other legal action against her if Steve did not pay the debt.

77.     The actions of NCO's employee, by falsely representing or implying on multiple occasions that she was an attorney or working on behalf of an attorney, violated § 559.72(12).

78.     Repeatedly causing the telephones of the Nicholsons and their family members to ring between July 6th and November 12th, 2007, when NCO knew or should have known that Steve was unable to pay the debt was willful conduct that could be reasonably expected to harass or abuse the debtor and his family, and as such, constituted a violation of § 559.72(7).

Liability and Damages (Fla. Stat. § 559.77)

79.     Based on information and belief, the violations of the FCCPA by NCO were intentional and did not result from a bona fide error.

80.     Based on information and belief, NCO does not maintain procedures reasonably adapted to avoid errors and violations of the FCCPA.

81. As a direct, proximate, and foreseeable result of NCO's violations of the FCCPA, Steve has suffered embarrassment, humiliation, severe emotional distress manifested as insomnia, depression, anxiety, and physical symptoms, economic loss due to missed work, and loss of consortium with his wife, and should be awarded actual damages to compensate him for NCO's acts pursuant to § 559.77.

82. Due to the repeated, flagrant, and intentional violations of the FDCPA by NCO, as well the as the number of people affect by these violations, Steve should be awarded the statutory damages pursuant to § 559.77, actual damages, punitive damages and such other relief as the court deems appropriate.

83. Pursuant to § 559.77, this court should award Plaintiffs reasonable attorney's fees and costs.

### Count V - Outrageous Conduct Causing Severe Emotional Distress (Steve Nicholson v. NCO)

84. Plaintiffs incorporate by reference paragraphs 7 through 26 of the Complaint.

85. NCO knew or should have known that it's actions towards Plaintiffs and other parties to collect the debt owed by Steve to Chase violated state and federal law.

86. NCO unlawfully threatened, harassed, demeaned, insulted, abused, and made misrepresentations to Steve and his family members with the intent to cause him emotional, mental, and physical suffering and anguish, with the ultimate objective of attempting to pressure him into paying the debt.

87.     In the alternative, NCO, in its attempts to coerce Steve into paying the debt, unlawfully threatened, harassed, demeaned, insulted, and abused Steve and his family members with reckless disregard for the emotional, mental, and physical consequences that its acts would have on him.

88.     NCO's actions toward Steve and his family members during its attempt to collect the debt, taken while in position of authority over Steve due to NCO's ability to affect his interests and pursue remedies at law against him, was outrageous and extreme conduct that went far beyond mere technical non-compliance with the law.

89.     As a direct, proximate, and foreseeable result of NCO's acts, Steve has suffered severe emotional distress manifested as insomnia, depression, anxiety, humiliation, embarrassment, mental suffering, physical symptoms, economic loss due to missed work, and loss of consortium with his wife.

90.     Due to the intentional and/or reckless nature of Defendant's conduct, its degree of reprehensibility, the pattern of repeated abuses, and the use of such intimidation tactics on other individuals not named in this count, Steve should also be awarded punitive damages.

### Request for Relief (All Counts)

WHEREFORE Plaintiffs pray that this Court award judgment against Defendants for actual and punitive damages as plead herein to be determined at trial, statutory damages for violation of the FDCPA, costs and attorneys fees as provided for in 15 U.S.C. § 1692k(3), Florida Statutes § 559.77, and any other relief which this court finds to be just and equitable.

## Demand for Jury Trial

Please take notice that Plaintiffs demand trial by jury in this action.

Respectfully Submitted,

*[signature]*

Alan C. Ewbank, P.A.
Florida Bar No.:0191752
Attorney for Plaintiffs
10028 Water Works Lane
Riverview, FL 33578